UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| MILDRED PERSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:21-cv-653 |
| DEPUTY VICTOR FULLER, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JAMES SAMPSON, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SHERIFF WILLIAM T. | ) | |
| JARRATT JR. | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiff Mildred Person ("Ms. Person"), by counsel and for her Complaint seeking judgment against Defendants Deputy Victor Fuller ("Deputy Fuller"), James Sampson ("Defendant Sampson"), and Sheriff William T. Jarratt, Jr. ("Sheriff Jarratt") (collectively, the "Defendants"), respectfully states as follows:

### **JURISDICTION & VENUE**

1.     This Court has federal question jurisdiction over Ms. Person's 42 U.S.C. § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343(a).

2.     This Court has supplemental jurisdiction over Ms. Person's state law claims pursuant to 28 U.S.C. § 1367.

3.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to Ms. Person's claims occurred in the Eastern District of Virginia.

4.     Assignment to the Richmond Division of the Eastern District of Virginia is proper, pursuant to Local Rule 3(B)(4), because a substantial part of the acts and omissions giving rise to Ms. Person's claims occurred in the County of Greensville.

## PARTIES

5.     Ms. Person is and was, at all times relevant, a woman over seventy (70) years old and a citizen and resident of the Commonwealth of Virginia.  Ms. Person resides in rural Greensville County, Virginia.

6.     Deputy Fuller is, and has at all relevant times been, a police officer employed by the Sheriff's Office of Greensville County, Virginia.  At all times alleged herein, Deputy Fuller acted under color of state law, under color of office, and within the scope of his employment with the Greensville County Sheriff's Office.  Deputy Fuller is sued in his individual capacity.

7.     Defendant Sampson is, and has at all relevant times been, a citizen and resident of the Commonwealth of Virginia.  Defendant Sampson purchased a plot of land near property owned by Ms. Person in late September 2020.  Shortly thereafter, he constructed a barrier on Ms. Person's driveway.[1]  As more fully alleged below, Deputy Fuller and Defendant Sampson subsequently conspired together to deprive Ms. Person of clearly established rights afforded to her under the U.S. Constitution.  Because of that conspiracy, Defendant Sampson acted under color of state law at all times alleged herein.

---

[1]     The right to use the driveway is the subject of ongoing state court litigation in Greensville County Circuit Court.  To date, the court in that action has granted Ms. Person two temporary injunctions enjoining Defendant Sampson from interfering with Ms. Person's use of the driveway.

8.     Sheriff Jarratt is, and has at all relevant times been, the Sheriff of Greensville County, Virginia.  Because Deputy Fuller acted, at all times relevant, within the scope of his employment with the Greensville County Sheriff's Office and under the color of that office, Sheriff Jarratt is vicariously and strictly liable for the state law claims asserted herein under the doctrine of *colore officii*.  Sheriff Jarratt is sued in his individual capacity.

## FACTUAL ALLEGATIONS

### I.     Defendant Sampson Becomes A Hostile Neighbor

9.     On September 23, 2020, Defendant Sampson purchased property in Emporia, Virginia.  The property that Defendant Sampson purchased is situated adjacent and to the east of a residential property owned by Ms. Person.  Ms. Person's property is located at 320 Courtland Road, Emporia, Virginia (the "Property").

10.     A certain driveway, which exists in part on the property now owned by Defendant Sampson, provides the only reasonable means of ingress and egress to and from the Property. Specifically, that driveway runs from a home located on the Property, briefly through the parcel now owned by Defendant Sampson, and ultimately connects to Highway 58.

11.     Ms. Person has owned the Property for more than fifty (50) years and has made constant and uninterrupted use of the driveway during that time.

12.     Ms. Person now leases the Property to a physically disabled tenant who suffers from limited mobility and relies on a walker to ambulate.  Ms. Person primarily resides at a different address nearby.

13.     Shortly after September 23, 2020, Defendant Sampson sought to preclude Ms. Person and her tenant from accessing the driveway.

14.     Specifically, to assert control over the driveway, Defendant Sampson erected an orange plastic fence across the portion of the driveway that ran through his property.  The makeshift fence had the effect of preventing Ms. Person's physically disabled tenant from accessing her own home.

15.     A true image of the orange fence is provided here:



## II.     The October 5 Incident

16.     On October 5, 2020, Ms. Person called the Sheriff's department to report that Defendant Sampson had erected the fence and was unlawfully preventing Ms. Person and her tenant from accessing the Property.  After she made the call, but before an officer arrived at the Property, Ms. Person collected legal documents from her home supporting her claim over the driveway.

17.      Deputy Fuller arrived at the Property before Ms. Person.  Once there, he encountered Defendant Sampson, who was standing near the entrance of the driveway.

18.     Defendant Sampson greeted Deputy Fuller by stating "Hey buddy," to which Deputy Fuller replied "Sup Mr. Sampson, how you doing?"  The two then shook hands.[2]

---

[2]      Deputy Fuller's body camera captured the October 5 Incident.

19.     Accordingly, Defendant Sampson and Deputy Fuller knew each other before Deputy Fuller's arrival at the Property on October 5, 2020.

20.     Defendant Sampson then declared that the driveway constituted his property, whereupon Deputy Fuller assured him: "I know."  In truth, a court had not yet adjudicated ownership of the driveway or the existence of any easements.

21.     Deputy Fuller then explained that he had visited the Property four (4) weeks prior, had examined a survey, and had concluded that the driveway belonged to Defendant Sampson. Indeed, although a court had not yet adjudicated ownership of the driveway, Deputy Fuller had, declaring that the driveway qualified as Defendant Sampson's property and that there was "nothing [Ms. Person] could do."

22.     Defendant Sampson then invited Deputy Fuller to inspect a flag that Defendant Sampson insisted demarcated his property line.  Defendant Sampson had posted the flag in the grass abutting the western edge of the driveway.  The flag was positioned at least several feet into the grass and away from the driveway.

23.     As Defendants stood near the flag, Defendant Sampson claimed that his insurance company had required him to erect a "safety fence" around the driveway before he could begin felling trees.  Defendant Sampson further complained that he had "things to accomplish," and that Ms. Person was interfering with his commercial objectives.

24.     Defendants continued to stand on the grassy area away from the driveway as they discussed the property dispute between Defendant Sampson and Ms. Person.  At one point, Defendant Sampson referred to Ms. Person as "ugly people," falsely claiming that Ms. Person had cussed him out in the street but that he "didn't even know who she was."

25.     During the conversation, Deputy Fuller noticed that Ms. Person's vehicle was approaching the driveway.  Indeed, at this time, Ms. Person was traveling westbound on Highway 58, which has a posted speed limit of 60 miles per hour.

26.     Ms. Person then pulled into the driveway and continued to drive through the orange plastic fence.  Meanwhile, Defendants remained physically present in the grassy area adjacent to the driveway.

27.     Ms. Person's vehicle never left the parameters of the driveway.

28.     Ms. Person never accelerated her vehicle as she entered the driveway.

29.     Both Deputy Fuller and Defendant Sampson personally observed Ms. Person's vehicle as she approached and entered the driveway.

30.     Defendant Sampson never attempted to retreat from the driveway or evade Ms. Person's vehicle in any way.  Nor did he have to, as Ms. Person's vehicle remained, at all times, several feet away from him.  Indeed, Defendant Sampson walked *toward* Ms. Person's vehicle as she drove into the driveway and through his plastic fence.

31.     Indeed, the following image depicts Defendant Sampson approaching Ms. Person's vehicle as she enters the driveway:



32.     After Ms. Person parked her vehicle, Defendant Sampson implored Deputy Fuller to arrest Ms. Person.  The two men then approached Ms. Person's vehicle as she slowly exited it with a folder in hand.  That folder contained legal documents that supported Ms. Person's claim over the driveway.

33.     As Ms. Person advised Defendants that she would like to show them the documents, Deputy Fuller cut her off and alleged that Ms. Person "tried to hit" Defendants with her vehicle.

34.     Given the outlandish nature of this knowingly false accusation, Ms. Person quickly and unequivocally denied it.

35.     Ms. Person then showed Defendants her documents.  Deputy Fuller accepted some of the documents and reviewed them.

36.     As Deputy Fuller reviewed the documents, Ms. Person explained to him that she had a right-of-way to the driveway.

37.     In response, Deputy Fuller stated that he had previously looked at a survey of the property and had concluded that the driveway belonged to Defendant Sampson.

38.     Deputy Fuller then left the conversation and retrieved his patrol vehicle.  After he had brought the vehicle into the driveway, Deputy Fuller told Ms. Person that she "was being detained," placed her in handcuffs, and forced her into the backseat of his patrol vehicle.  Although it was a warm day, Deputy Fuller kept the windows shut and the air conditioning turned off.

39.     Defendant Sampson decided to add insult to injury, asking Deputy Fuller if Defendant Sampson could tow Ms. Person's vehicle from the driveway.

40.     Ms. Person then sat alone in the backseat of Deputy Fuller's patrol vehicle as Deputy Fuller chatted with Defendant Sampson and his crewmen.  During this time, Defendant Sampson falsely claimed that Ms. Person had attempted to run him over.  In response, Deputy Fuller, despite having personally witnessed the falsity of that allegation, agreed that it was true.

41.     Additionally, Deputy Fuller mocked Ms. Person over her claim that she had a right-of-way to the driveway.  Specifically, he laughed as he observed that Ms. Person's legal documents looked "old" and "black and white and handwritten."

42.     Eventually, Deputy Fuller's superior, Lieutenant Rose ("Lt. Rose"), arrived on the scene.

43.     Upon Lt. Rose's arrival, Deputy Fuller approached Lt. Rose and gestured toward Defendant Sampson as if to invite Defendant Sampson to the conversation.  Defendant Sampson accepted that invitation.

44.     Deputy Fuller and Defendant Sampson then provided a false account of what had transpired, to include the false allegation that Ms. Person had almost struck them with her vehicle.

45.     Lt. Rose listened to the account and investigated the scene.  Ultimately, Lt. Rose, not convinced that Defendant Sampson had legal right to exclude Ms. Person from use of the

driveway, concluded that the parties should resolve the matter in court.  Lt. Rose then asked Deputy

Fuller with which offenses he intended to charge Ms. Person.

46.     Deputy Fuller responded that he intended to charge Ms. Person with reckless

driving, curse and abuse, and disorderly conduct.

47.     Defendant Sampson then chimed in that "if I hadn't moved, she would have hit

me."  That allegation was blatantly false, yet Deputy Fuller made no effort to correct it.  Indeed,

Deputy Fuller intentionally amplified the falsehood by adding the fantastic claim that Defendant

Sampson had to "jump out the way" to avoid Ms. Person's vehicle.

48.     Still unconvinced, Lt. Rose asked Deputy Fuller if he had his body camera activated

and, if so, whether the camera had captured the incident.  Deputy Fuller fumbled his words but did

not directly answer the question.

49.     Lt. Rose then observed the high rate of speed at which traffic was traveling on

Highway 58 and inquired into the positioning of Deputy Fuller's vehicle.  When Deputy Fuller

indicated that his vehicle had been positioned on the shoulder of the highway and in front of the

driveway, Lt. Rose asked if Deputy Fuller had activated its lights.  Deputy Fuller had not, so he

responded that his "directional" was on.

50.     Lt. Rose then discussed the situation with Ms. Person, who remained detained and

handcuffed in the backseat of Deputy Fuller's vehicle.  Lt. Rose advised Ms. Person that the right

to use the driveway was a civil matter that she and Defendant Sampson had to resolve through the

courts.

51.     In addition, Lt. Rose expressed concern about Deputy Fuller and Defendant

Sampson's false allegation that Ms. Person had tried to run them over.  Again, Ms. Person quickly

and unequivocally denied the allegation, stating:  "I wasn't trying to run over top of ya'll, ya'll

know that." Ms. Person then pointed out that she was the one who had called the police to the Property *in the first instance*.

52.   Ms. Person then explained to Lt. Rose that her vehicle had remained in the driveway and that Defendants were standing off to the side in the grassy area. That explanation prompted Lt. Rose to ask Deputy Fuller where he and Defendant Sampson in fact were standing.

53.   In response, Deputy Fuller told Lt. Rose that he was standing "at the edge of the driveway," while Defendant Sampson was standing "almost in the middle." That answer, again, was intentionally and knowingly false. In truth, both Deputy Fuller and Defendant Sampson were standing in the grassy area off the driveway and remained several feet away from Ms. Person's vehicle at all times.

54.   Lt. Rose then asked Ms. Person if she was at least trying to scare Deputy Fuller and Defendant Sampson. Ms. Person quickly answered that she was not trying to scare Defendants, but that she was only trying to drive through Defendant Sampson's makeshift fence so that her physically disabled tenant would have access to her home.

55.   Lt. Rose then asked Deputy Fuller to follow him away from the parties so the two could speak privately. During this conversation, Lt. Rose instructed Deputy Fuller to issue Ms. Person two summonses: one for reckless driving and another for abusive language. In addition, Lt. Rose told Deputy Fuller to release Ms. Person.

56.   Lt. Rose also opined that Ms. Person had not destroyed property, because the fence could easily be reconstructed. He further stated that the driveway in fact was a right of way that Ms. Person and her tenants had been using and that Defendant Sampson had suddenly tried to prevent them from using it.

57.     Following this conversation, Deputy Fuller issued Ms. Person the two summonses and released her.

### III.     Deputy Fuller and Defendant Sampson Conspire to Charge Ms. Person with a Felony Offense in Violation of her Constitutional Rights.

58.     Two days after the incident, on October 7, 2020, Defendant Sampson contacted Deputy Fuller and stated his intention to swear out a felony warrant against Ms. Person.  During this conversation, Defendant Sampson persisted in — and Deputy Fuller acquiesced in — Defendant Sampson's knowingly false allegation that Ms. Person had attempted to strike Defendant Sampson with her vehicle.

59.     Deputy Fuller told Defendant Sampson to go ahead and take out the warrant against Ms. Person.

60.     Deputy Fuller knew, however, that the basis for Defendant Sampson's warrant request was the materially false accusation that Ms. Person had attempted to strike Defendant Sampson with her vehicle.

61.     Later that same day, Defendant Sampson again contacted Deputy Fuller and told him that Defendant Sampson had appeared before a magistrate but that the magistrate would not issue the warrant.  Instead, the magistrate advised Defendant Sampson that a felony warrant requires a supporting statement by a police officer.

62.     In response, Deputy Fuller agreed with Defendant Sampson that Deputy Fuller would appear before the magistrate to procure a felony warrant against Ms. Person.

63.     In part, Defendant Sampson was motivated to seek out a felony warrant because he saw it as an opportunity to secure leverage against Ms. Person in their ongoing dispute over the driveway.  Indeed, when answering Ms. Person's complaint in the state court litigation, Defendant Sampson asserted a counterclaim in which he alleged that "Plaintiff Person physically threatened

11

Counterclaim Plaintiff Jim Sampson by driving her car towards him in an intentionally menacing manner."  (Defendant Sampson Answer and Counterclaim, ¶ 27.)

64.     An authentic copy of Defendant's Sampson's Answer to Complaint and Counterclaim is attached hereto as Exhibit A.

65.     In addition, Defendant Sampson knew that litigation over the driveway was likely. Indeed, his property attorney had sent Ms. Person a letter, dated September 25, 2020, in which the attorney warns that legal action will ensue if Ms. Person does not cease and desist her use of the driveway.

66.     An authentic copy of the September 25, 2020, Letter is attached hereto as Exhibit B.

67.     In part, Deputy Fuller was motivated to seek out a felony warrant because of both his personal relationship with Defendant Sampson and his belief that the driveway belonged to Defendant Sampson.

68.     Indeed, Deputy Fuller and Defendant Sampson clearly enjoyed a pre-existing relationship before Deputy Fuller's arrival at the Property on October 5, 2020.

69.     Specifically, when Deputy Fuller arrived, Defendant Sampson cheerfully greeted him with a "Hey Buddy," prompting Deputy Fuller to respond by referring to Defendant Sampson by name.

70.     In addition, Deputy Fuller had, in his mind, already resolved the dispute over the driveway.  As he made clear throughout the entire encounter, he believed that Defendant Sampson could exclude Ms. Person from using the driveway.

71.     Moreover, Deputy Fuller expressed clear frustration with having to respond to Ms. Person's call, consistently complaining that he had visited the Property four (4) weeks prior and had told Ms. Person that the driveway belonged to Defendant Sampson.

72.     Nonetheless, Ms. Person continued to press her rights to the driveway, threatening Deputy Fuller's unilateral decision that the driveway belonged to Defendant Sampson.

73.     Having come to an unlawful agreement with Defendant Sampson and being fully motivated to carry it out, Deputy Fuller visited a magistrate on October 9, 2020.

74.     Specifically, Deputy Fuller appeared before a different magistrate than Defendant Sampson had appeared before and provided materially false statements to the new magistrate.

75.     Indeed, Deputy Fuller falsely claimed that Ms. Person had attempted to strike Defendant Sampson with her vehicle on October 5, 2020.

76.     However, Deputy Fuller had actual knowledge that his statements were false because he personally witnessed the relevant incident.

77.     On the basis of Deputy Fuller's knowingly false statements, the magistrate issued an arrest warrant for Attempted Malicious Wounding, in violation of Virginia Code §§ 18.2-26, 18.2-51.

78.     Attempted Malicious Wounding constitutes a Class 5 Felony under Virginia law and carries a potential sentence of 10 years' imprisonment.

79.     The following day, on October 10, 2020, Deputy Fuller traveled to Ms. Person's home to execute the arrest warrant.

80.     When Deputy Fuller arrived at Ms. Person's home, she was bathing her disabled son.  Ms. Person's grandson was also present at the home.

13

81.     While Deputy Fuller waited for Ms. Person to dress her son so that he could arrest her for Attempted Malicious Wounding, he engaged in a conversation with Ms. Person's grandson.

82.     During this conversation, Ms. Person's grandson expressed his difficulty understanding why Deputy Fuller had arrived to arrest his 74-year-old grandmother.

83.     In response, Deputy Fuller told the grandson that Deputy Fuller originally "was not going to take the charges out," and that he had only written Ms. Person two tickets on the day of the incident.  Deputy Fuller further explained that "[Defendant Sampson] took out [the warrant] on his behalf."  Accordingly, Deputy Fuller effectively admitted that Defendant Sampson had recruited and deputized Deputy Fuller to swear out a felony warrant premised on knowingly false testimony.

84.     Ms. Person's grandson then stated that he was convinced that when the case went to court, the judge "would just throw it out."

85.     In response, Deputy Fuller stated that "he hopes [the judge] does [throw out the charge]."

86.     Accordingly, Deputy Fuller expressly acknowledged that he had sworn out a felony warrant susceptible to summary dismissal.

87.      Following this conversation, Deputy Fuller arrested Ms. Person and transported her to the Sheriff's Office.  There, she was processed and subjected to fingerprinting before the magistrate released her on her own recognizance.

88.     On January 26, 2021, after reviewing the relevant body camera footage, the Commonwealth Attorney for Greensville County dismissed with prejudice the Attempted Malicious Wounding charge for lack of evidence.

89.     An authentic copy of the body camera footage depicting the October 5 Incident is attached hereto as Exhibit C.

90.     An authentic copy of the body camera footage depicting Deputy Fuller's conversation with Ms. Person's grandson is attached hereto as Exhibit D.

91.     An authentic copy of the felony warrant procured by Deputy Fuller pursuant to his conspiracy with Defendant Sampson is attached hereto as Exhibit E.

92.     An authentic copy of the Plea Agreement dismissing the Attempted Malicious Wounding charge for lack of evidence is attached hereto as Exhibit F.

### Count I – Section 1983 Conspiracy to Deprive Constitutional Rights
### (Deputy Fuller & Defendant Sampson)

93.     The foregoing paragraphs are incorporated into this Count as if fully alleged herein.

94.     At all times relevant, Deputy Fuller acted within the scope of his employment with the Greensville County Sheriff's Office and under color of state law.

95.     Likewise, at all times relevant, Defendant Sampson acted within the scope of his conspiracy with Deputy Fuller to deprive Ms. Person of her constitutional rights.  Accordingly, Defendant Sampson acted under color of state law.

96.     Deputy Fuller and Defendant Sampson came to an agreement between themselves to act in concert to deprive Ms. Person of her constitutional rights.

97.     As asserted above, and as depicted in the body camera footage, Defendants conspired together to falsely arrest and maliciously prosecute Ms. Person for Attempted Malicious Wounding.  To further that conspiracy, Defendants falsely asserted, to both Lt. Rose and to two separate magistrates, that Ms. Person had attempted to strike Defendant Sampson with her vehicle as she pulled into her driveway on October 5, 2020.  Through those false assertions, Deputy Fuller

procured a felony arrest warrant for Attempted Malicious Wounding and executed that warrant against Ms. Person.

98.    In addition, Defendants acted jointly in concert to accomplish the unlawful purposes of their conspiracy and carried out several overt acts in furtherance thereof.  Specifically, Defendant Sampson contacted Deputy Fuller after Defendant Sampson was unable to procure a felony arrest warrant against Ms. Person.   Upon learning that Defendant Sampson could not procure the arrest warrant himself, Deputy Fuller agreed to act on Defendant Sampson's behalf in swearing out a warrant that Deputy Fuller fully knew was unsupported by probable cause.  In so doing, both Defendants persisted in their false claims that Ms. Person had attempted to strike Defendant Sampson with her vehicle.  Without Deputy Fuller's cooperation in the conspiracy, Defendant Sampson would not have been able to complete its unlawful objectives.

99.    Deputy Fuller effectively admitted that he was working in concert with Defendant Sampson when Deputy Fuller advised Ms. Person's grandson that Deputy Fuller had not originally intended to swear out a felony warrant against Ms. Person.

100.    Moreover, in seeking a warrant for Attempted Malicious Wounding, Deputy Fuller contravened the advice of Lt. Rose.  Specifically, after Lt. Rose had completed his investigation and analysis of the incident, he determined that only two summonses were warranted:  one for reckless driving and another for abusive language.   Likewise, Deputy Fuller had originally intended to charge Ms. Person only with reckless driving, curse and abuse, and disorderly conduct. But days later, Defendant Sampson contacted Deputy Fuller and recruited him to seek out an additional charge that would expose Ms. Person to felony liability.  Deputy Fuller then proved an eager participant in the conspiracy, going beyond what his superior had advised him to do (and

16

what he originally intended to do) and swearing out a felony arrest warrant based on false testimony.

101.    Deputy Fuller and Defendant Sampson completed their conspiracy by actually procuring a felony warrant and arresting Ms. Person for Attempted Malicious Wounding. Accordingly, Ms. Person was deprived of her constitutional rights, secured by the Fourth and Fourteenth Amendments, to be free from unreasonable seizures and from malicious prosecution.

102.    The misconduct described in this Count was objectively unreasonable.  Indeed, no reasonable officer, having personally witnessed the October 5 Incident, could believe that probable cause existed to arrest Ms. Person for Attempted Malicious Wounding as that crime is defined under Virginia law.

103.    By virtue of having entered into a conspiracy with Deputy Fuller to deprive Ms. Person of her constitutional rights, Defendant Sampson is liable under Section 1983 for the claims asserted in Counts II and III below.

104.    As a direct and proximate result of the illegal prior agreement and actions in furtherance of the conspiracy described above, Ms. Person's rights were violated, and she suffered the injuries described in the "Damages" section below.

### COUNT II – Section 1983 False Arrest in Violation of the Fourth and Fourteenth Amendments.
**(Deputy Fuller & Defendant Sampson)**

105.    The foregoing paragraphs are incorporated into this Count as if fully alleged herein.

106.    At all times relevant, Ms. Person was afforded certain clearly established rights under the United States Constitution.  Among those rights is the Fourth Amendment right to be free from a state actor visiting an unreasonable seizure upon her person — to include an arrest by

a law enforcement officer that is not supported by probable cause to believe a crime has been committed or is about to be committed.

107.    As asserted above, Deputy Fuller, pursuant to his conspiracy with Defendant Sampson, arrested Ms. Person for Attempted Malicious Wounding in violation of Virginia Code §§ 18.2-26, 18.2-51.

108.    At all times relevant, Deputy Fuller acted within the scope of his employment with the Greensville County Sheriff's Office and under color of state law.

109.    Defendant Sampson acted under color of state law because he entered into an unlawful conspiracy with Deputy Fuller to deprive Ms. Person of her constitutional rights. Alternatively, Defendant Sampson is liable under Section 1983 pursuant to the joint participation doctrine.

110.    No reasonable officer, having personally witnessed the October 5 Incident, would have believed that probable cause existed to swear out an arrest warrant and subsequently arrest Ms. Person for Attempted Malicious Wounding.  As evidenced by the body camera footage, Ms. Person never came close to striking Defendant Sampson with her vehicle and, contrary to Deputy Fuller's false assertions, Defendant Sampson never took (or had to take) evasive action to avoid it.  Moreover, the facts and circumstances surrounding the October 5 Incident clearly demonstrate that Ms. Person did not have the specific intent to commit Attempted Malicious Wounding as that crime is defined under Virginia law.

111.    That a reasonable officer would not have believed that probable cause existed to arrest Ms. Person for Attempted Malicious Wounding is further evidenced by Lt. Rose's advice to issue only summonses for reckless driving and abusive language.  Nonetheless, Deputy Fuller

ignored the advice of the reasonable officer on the scene and, in furtherance of his conspiracy with Defendant Sampson, swore out a felony warrant against Ms. Person.

112.    Notwithstanding the absence of probable cause, Deputy Fuller arrested Ms. Person for Attempted Malicious Wounding on October 10, 2020.  In effectuating that arrest, Deputy Fuller took Ms. Person from her disabled son, placed her in handcuffs, and subjected her to processing and fingerprinting.

113.    As a direct and proximate result of the unconstitutional conduct set forth herein, Ms. Person's rights were violated, and she suffered the injuries described in the "Damages" section below.

## COUNT III – Section 1983 Malicious Prosecution in Violation of the Fourth Amendment
### (Deputy Fuller & Defendant Sampson)

114.    The foregoing paragraphs are incorporated into this Count as if fully alleged herein.

115.    As detailed under the factual allegations incorporated into this Count, Defendants caused a malicious prosecution of Ms. Person in violation of her Fourth Amendment rights. Specifically, Defendants caused Ms. Person to be seized pursuant to legal process that was unsupported by probable cause.

116.    At all times relevant, Deputy Fuller acted within the scope of his employment with the Greensville County Sheriff's Office and under color of state law.

117.    Defendant Sampson acted under color of state law because he entered into an unlawful conspiracy with Deputy Fuller to deprive Ms. Person of her constitutional rights. Alternatively, Defendant Sampson is liable under Section 1983 pursuant to the joint participation doctrine.

118.    Deputy Fuller and Defendant Sampson constituted the complaining witness or witnesses who procured the felony arrest warrant against Ms. Person, or otherwise were the

19

proximate cause of the felony arrest warrant being issued.  Accordingly, both Defendants, in furtherance of the conspiracy described in detail under Count I, maliciously instituted legal process against Ms. Person.

119.   The Attempted Malicious Wounding charge was baseless and without probable cause.  As evidenced by the body camera footage, Ms. Person never came close to striking Defendant Sampson with her vehicle and, contrary to Deputy Fuller's false assertions, Defendant Sampson never took (or had to take) evasive action to avoid it.  Moreover, the facts and circumstances surrounding the October 5 Incident clearly demonstrate that Ms. Person did not have the specific intent to commit Attempted Malicious Wounding as that crime is defined under Virginia law.

120.   Because Deputy Fuller and Defendant Sampson instituted a prosecution of Ms. Person without any probable cause, they acted with legal malice.

121.   Moreover, Defendant Sampson acted with common law malice in that his actions were motivated by ill will and spite.  Specifically, Defendant Sampson was motivated to punish Ms. Person for her unwillingness to relinquish control of the driveway and by his desire to secure leverage against Ms. Person when the two inevitably litigated use of the driveway.

122.   Similarly, Deputy Fuller acted with common law malice in that his actions were motivated by ill will and spite.  Specifically, Deputy Fuller had, in his mind, determined that Defendant Sampson enjoyed the exclusive right to control and make use of the driveway. Nonetheless, Ms. Person continued to press her right to use the driveway.  Ms. Person's tenacity threatened Deputy Fuller's unilateral decision to grant Defendant Sampson sole control over the driveway.

123.    Finally, the legal proceedings terminated in a manner favorable to Ms. Person. Indeed, the Commonwealth Attorney dismissed with prejudice the Attempted Malicious Wounding charge for lack of evidence.

124.    As a direct and proximate result of the unconstitutional conduct set forth herein, Ms. Person's rights were violated, and she suffered the injuries described in the "Damages" section below.

## COUNT IV – State Law Malicious Prosecution
### (All Defendants)

125.    The foregoing paragraphs are incorporated into this Count as if fully alleged herein.

126.    As detailed under the factual allegations incorporated into this Count, Deputy Fuller and Defendant Sampson caused a malicious prosecution of Ms. Person.  Specifically, they caused Ms. Person to be seized pursuant to legal process that was unsupported by probable cause.

127.    Deputy Fuller and Defendant Sampson constituted the complaining witness or witnesses who procured the felony arrest warrant against Ms. Person, or otherwise were the proximate cause of the felony arrest warrant being issued.  Accordingly, both Defendants, in furtherance of the conspiracy described in detail under Count I, maliciously instituted legal process against Ms. Person.

128.    Additionally, because Deputy Fuller acted, at all times relevant, within the scope of his employment with the Greensville County Sheriff's Office and under the color of that office, Sheriff Jarratt is vicariously and strictly liable for Deputy Fuller's acts under the doctrine of *colore officii*.

129.    Specifically, the actions undertaken by Deputy Fuller were unauthorized by his position, but nonetheless done in a form purporting official duty.  Indeed, Deputy Fuller is not authorized to swear out felony warrants based on knowingly false testimony.  Moreover, he swore

21

out the Attempted Malicious Wounding charge in contravention of Lt. Rose's instructions. And, as noted above, only a police officer can swear out a felony warrant under Virginia law. As such, Deputy Fuller undertook a malicious prosecution of Ms. Person while acting under color of office.

130.   The Attempted Malicious Wounding charge was baseless and without probable cause. As evidenced by the body camera footage, Ms. Person never came close to striking Defendant Sampson with her vehicle and, contrary to Deputy Fuller's false assertions, Defendant Sampson never took (or had to take) evasive action to avoid it. Moreover, the facts and circumstances surrounding the October 5 Incident clearly demonstrate that Ms. Person did not have the specific intent to commit Attempted Malicious Wounding as that crime is defined under Virginia law.

131.   Because Defendants instituted a prosecution of Ms. Person without any probable cause, they acted with legal malice.

132.   Moreover, Defendant Sampson acted with common law malice in that his actions were motivated by ill will and spite. Specifically, Defendant Sampson was motivated to punish Ms. Person for her unwillingness to relinquish control of the driveway and by his desire to secure leverage against Ms. Person when the two inevitably litigated use of the driveway.

133.   Similarly, Deputy Fuller acted with common law malice in that his actions were motivated by ill will and spite. Specifically, Deputy Fuller had, in his mind, determined that Defendant Sampson enjoyed the exclusive right to control and make use of the driveway. Nonetheless, Ms. Person continued to press her right to use the driveway. Ms. Person's tenacity threatened Deputy Fuller's unilateral decision to grant Defendant Sampson sole control over the driveway.

134.   Finally, the legal proceedings terminated in a manner favorable to Ms. Person. Indeed, the Commonwealth Attorney dismissed with prejudice the Attempted Malicious Wounding charge for lack of evidence.

135.   As a direct and proximate result of the unlawful conduct set forth herein, Ms. Person's rights were violated, and she suffered the injuries described in the "Damages" section below.

## COUNT V – State Law Battery
### (All Defendants)

136.   The foregoing paragraphs are incorporated into this Count as if fully alleged herein.

137.   Deputy Fuller unlawfully battered Ms. Person when he intentionally arrested her on October 10, 2020, for Attempted Malicious Wounding.  That arrest was unlawful in that it was unsupported by probable cause and undertaken pursuant to the unlawful conspiracy described in detail above under Count I.  *Gnadt v. Commonwealth*, 27 Va. App. 148, 151 (Va. Ct. App. 1998) ("An unlawful arrest or an arrest utilizing excessive force is a battery because that touching is not justified or excused and therefore is unlawful.").

138.   Additionally, Defendant Sampson, by intentionally recruiting Deputy Fuller to procure a felony arrest warrant, had knowledge to a substantial certainty that an unlawful arrest of Ms. Person would result.

139.   Moreover, because Deputy Fuller acted, at all times relevant, within the scope of his employment with the Greensville County Sheriff's Office and under the color of that office, Sheriff Jarratt is vicariously and strictly liable for Deputy Fuller's acts under the doctrine of *colore officii*.

140.   Specifically, the actions undertaken by Deputy Fuller were unauthorized by his position, but nonetheless done in a form purporting official duty.  Indeed, Deputy Fuller is not

23

authorized to swear out felony warrants based on knowingly false testimony. Moreover, he swore out the Attempted Malicious Wounding charge in contravention of Lt. Rose's instructions. And, as noted above, only a police officer can swear out a felony warrant under Virginia law. As such, Deputy Fuller undertook a battery of Ms. Person while acting under color of office.

141.    Defendants, acting in concert, committed an unwanted and unlawful touching upon Ms. Person.

142.    This touching was without Ms. Person's consent, without excuse, and without any legal justification.

143.    Specifically, any reasonable officer would know, under the facts and circumstances detailed in the allegations incorporated into this Count, that he did not have probable cause to seek an arrest warrant against Ms. Person for Attempted Malicious Wounding and to subsequently execute that warrant.

144.    As a direct and proximate result of the unlawful conduct set forth herein, Ms. Person's rights were violated, and she suffered the injuries described in the "Damages" section below.

## **DAMAGES**

As a direct and proximate result of the Defendants' conduct, Ms. Person suffered physical and severe emotional injuries and damages, including:

a.    Mental anguish, emotional pain, torment and suffering caused by the Defendants' unlawful seizure of Ms. Person, the Defendants' unlawful invasion of Ms. Person's privacy, and the Defendants' conspiracy to deprive Ms. Person of her constitutional rights;

b.    Violation of Ms. Person's constitutional rights;

24

      c.      Shame, fright, mortification, embarrassment, humiliation, and loss of dignity and pride;

      d.      Physical pain and discomfort occasioned by the October 10, 2020 arrest;

      e.      Costs associated with any future effort to secure expungement of the baseless Attempted Malicious Wounding Charge; and

      f.      Other associated costs caused by the Defendants' unlawful and tortious conduct as alleged in this Complaint.

Further, Ms. Person respectfully requests that the Court award her expenses that she reasonably incurs in this litigation, including reasonable attorneys' fees and expert fees, pursuant to 42 U.S.C. § 1988(b) and (c).

Plaintiff Mildred Person demands judgment, jointly and severally, against Defendants Deputy Victor Fuller, James Sampson, and Sheriff William T. Jarratt, Jr. for compensatory damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), and punitive damages in the amount of SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750,000.00), together with costs incurred in the pursuit of a just resolution of this matter, pre-judgment and post-judgment interest, and attorneys' fees.

**A JURY TRIAL IS REQUESTED.**

                              Respectfully submitted,
                              MILDRED PERSON

                              By: _____/s/_____
                                      Counsel

                              Jonathan E. Halperin - VSB No. 32698
                              Darrell J. Getman - VSB No. 95791
                              Halperin Law Center, LLC
                              4435 Waterfront Drive, Suite 100
                              Glen Allen, VA 23060

Phone: (804) 527-0100
Facsimile: (804) 597-0209
jonathan@hlc.law
darrell@hlc.law
*Counsel for Plaintiff*